IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. CASE NO: 2:07cr284-WKW |
| | ) | |
| WILLIAM EARL HUNT | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pending before the Court is Defendant's Motion to Suppress (Doc. #27). On 8 July 2008, this Court held a hearing on Defendant's Motion. Defendant seeks to suppress "evidence obtained in an illegal search of the [D]efendant's residence." (Doc. #27). Upon consideration of the Motion and the testimony at the evidentiary hearing, the undersigned RECOMMENDS that the Motion be DENIED.

**I.    BACKGROUND**

Based on the parties' briefs and testimony at the hearing held on 8 July 2008, and to a preponderance of the evidence,[1] the Court finds as follows:

On or about 17 July 2007, a task force from the Elmore County Sheriff's Department attempted to execute an arrest warrant for Defendant William Earl Hunt (Hunt). In the early morning hours the officers arrived at an address they believed to be

---

[1] The Court reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (*citing Lego v. Twomey*, 404 U.S. 477, 489 (1972)).

Hunt's place of residence on South Pine Street in Wetumpka, Alabama.[2] The officers entered the house and encountered a female, but did not find Hunt. The female was arrested for possession of marijuana. While searching the house for Hunt, the officers also found a rifle magazine.

While in custody, the female told the officers she believed Hunt was at his mother's house located on North Street in Wetumpka, Alabama. The officers went to the North Street address where, operating as a four man team, two of the officers went to the front of the house and two went toward the back. One of the officers who went toward the rear of the house, Officer David Slay (Officer Slay), came across an open window, located on the side of the house. Officer Slay looked inside the window and saw a sleeping male subject who did not fit Hunt's physical description. Officer Slay also observed a marijuana "roach" and marijuana residue in the window sill. After awakening the male subject, Officer Slay identified himself and asked the subject to go to the front door.

Officer Slay proceeded back to the front of the house and informed the other two officers he had made contact with a male subject and had instructed the subject to come to the front door. At that time, the subject opened the front door and, when asked by the officers, identified himself as Antonio Hunt (Antonio). The officers asked Antonio if Hunt was in the house. Antonio pointed toward the back of the house. As the officers

---

[2] Although the physical location of the house was not in question at the hearing, there appeared to be a disagreement between the officers and Hunt as to the actual street address of the house.

entered the house a female entered the front room. One of the officers detained Antonio and the female while Officer Slay and Officer Chris Zeigler (Officer Zeigler) continued to search the house for Hunt.

Officers Slay and Zeigler made their way to the back of the house where they encountered a black male sleeping on a bed in a small room. The male awakened and asked what was going on. The officers identified themselves and stated they had a warrant for Hunt. The male identified himself as Hunt. Hunt stood up, and the officers placed him in handcuffs. While Hunt was standing, Officer Slay saw a long object covered with a sheet or towel, leaning against a cabinet next to the bed. It was Officer Slay's belief that the covered object was a rifle. While maintaining custody of Hunt, Officer Slay grabbed the object and confirmed it was a gun. Officer Slay kept control of Hunt and the gun while Officer Zeigler cleared the rest of the house in a "protective sweep."

At the hearing on the Motion to Suppress, Hunt testified he resided at the South Pine Street location with his niece and had been visiting his mother's house for a family grill out. Hunt stated he had stayed late at his mother's house that night to help clean up after the party and decided to stay through the night because he had warrants out for his arrest and did not want to risk being seen by the police. Hunt also stated he had not been sleeping at his mother's house, but rather, had been up all night smoking crack and marijuana and had only fallen asleep just before the officers arrived. Hunt denied

ownership of the gun and denied any knowledge of the gun. Hunt also testified it was he who opened the door to his mother's residence, not his brother. The Court did not find that aspect of Hunt's testimony credible, but rather, found the officers' version of the events to be true.

## II.  DISCUSSION

In briefing, the Government raised the issue of Hunt's standing to challenge the search of his mother's house and seizure of the gun. At the hearing, the Court inquired of Hunt the basis for his standing. At the end of the hearing, Hunt essentially conceded he did not have standing to challenge the search and seizure.[3] Based on the facts and testimony presented at the hearing, it is clear Hunt lacks standing to challenge the search of his mother's home and the seizure of the gun.

Before Hunt may object to the search of his mother's house and the seizure of the gun found therein, he must establish a legitimate expectation of privacy in his mother's house and/or the gun. *See Rakas v. Ill.*, 439 U.S. 128 (1978). "The Fourth Amendment protects individuals from unreasonable search and seizure." *United States v. Chanthasouxat*, 342 F.3d 1271, 1275 (11th Cir. 2003). Searches and seizures inside a home without a search warrant are presumptively unreasonable. *Payton v. N. Y.*, 445 U.S. 573, 586 (1980). However, "an **arrest warrant** founded on probable cause implicitly

---

[3] "I don't argue with the Court about the standing issue, really, because typically I think it's -- it's not your typical standing. No, sir. I can't -- I'm not going to go there." (Doc. #40 at 77)

carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id*. at 603 (emphasis added). In this case, the officers had an arrest warrant for Hunt and entered the home of a third party, Hunt's mother's house, to effectuate the arrest.

The issue then becomes whether Hunt can establish an expectation of privacy in his mother's house. For Hunt to establish his Fourth Amendment rights were violated by the entry and search of his mother's house, he must "demonstrate a legitimate expectation of privacy in the premises searched." *United States v. Lehder-Rivas*, 955 F.2d 1510, 1521 (11th Cir. 1992). "A person has an expectation of privacy protected by the Fourth Amendment if he has a subjective expectation of privacy, and if society is prepared to recognize that expectation as objectively reasonable." *United States v. Miravalles*, 280 F.3d 1328, 1331 (11th Cir. 2002).

At the hearing, Hunt testified he was visiting his mother's house after a family get together. Status as an overnight guest may entitle an individual to the expectation of privacy. *See Minn. v. Olson*, 495 U.S. 91, 98 (1990) (holding an overnight guest has an expectation of privacy, including children staying overnight at a parent's house, which is a "longstanding social custom that serves functions recognized as valuable by society."). However, the act of staying overnight at a third party residence does not automatically entitle a defendant to the protections of the Fourth Amendment. An overnight guest still must establish the subjective component of the test for a reasonable expectation of

5

privacy. *See United States v. Jones*, 184 F. App'x 943 (11th Cir. 2006); *see also United States v. Sweeting*, 933 F.2d 962 (11th Cir. 1991).

Hunt expressly disavowed any ownership interests in the dwelling and acknowledged he neither lived nor resided at his mother's residence. He repeatedly stated he did not stay there. He testified he was not there to sleep over at the house,[4] but rather, up all night smoking crack and marijuana and watching television, and had just fallen asleep before the officers arrived. When asked who uses the bedroom at the dwelling, Hunt stated it was a family house with many people coming and going and there was no telling who had been in the house.

"The fact that [Hunt] had temporary access to the premises along with several other members of [his] family and had some personal effects there does not establish the requisite subjective expectation of privacy to assert standing when coupled with [his] explicit disclaimer of ownership or interest." *Sweeting*, 933 F.2d at 964. Thus, Hunt is unable to establish standing to challenge the search of his mother's house.

It is also clear Hunt cannot establish a privacy right, and thus standing, to contest the seizure of the gun. As with establishing a privacy right for challenging a search,

---

[4] Whether or not Hunt intended to sleep over at his mother's house is important in evaluating Hunt's subjective expectation of privacy because "we are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend." *Olson*, 495 U.S. at 99. The fact that Hunt had no intention of sleeping at his mother's house, but rather simply using it as convenient place to "get high," coupled with his insistence that the house was used by many others as essentially a "family house" and there "[a]in't no telling who's been in the house," (Doc. #73) evidences Hunt had no real expectation of privacy while in his mother's house.

6

"[t]he Supreme Court has enunciated a two-part test to determine whether an individual has a legitimate expectation of privacy in the object of a search: (1) the individual must manifest a subjective expectation of privacy in the object of the challenged search, and (2) society must be willing to recognize that expectation as legitimate ." *United States v. Smith*, 39 F.3d 1143, 1144 (11th Cir.1994) (*citing Cal. v. Ciraolo*, 476 U.S. 207, 211 (1986)).

"[The Eleventh Circuit] has ruled that disclaiming ownership or knowledge of an item ends a legitimate expectation of privacy in that item." *United States v. Hawkins*, 681 F.2d 1343, 1345 (11th Cir. 1982). In his brief and at the hearing, Hunt repeatedly denied ownership in, and even knowledge of, the gun. "Not only did he fail to manifest a subjective expectation of privacy in the [gun], he affirmatively disavowed any such expectation." *United States v. McBean*, 861 F.2d 1570, 1574 (11th Cir. 1988). Thus, Hunt lacks standing to challenge the seizure of the gun.

## III.  CONCLUSION

Hunt is unable to show a legitimate expectation of privacy in either his mother's house, which was searched, or the gun that was seized and thus Hunt lacks standing to challenge the suppression of the gun. Therefore, it is the RECOMMENDATION of the Magistrate Judge that Hunt's Motion to Suppress (Doc. #27) be DENIED. It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before 12 August 2008**. Any objections filed must specifically

identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 31st day of July, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE